UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA YALONDA GRAYS,

    *Plaintiff*,

v.                                    CASE NO. 13-cv-11986

COMMISSIONER OF                   DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,                   MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (docket 9) be **GRANTED**, that Defendant's Motion for Summary Judgment (doc. 15) be **DENIED**, and the decision of the Commissioner be **REVERSED**.

**II.    REPORT**

    A.    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 9, 15, 16.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability and DIB on April 5, 2011, alleging that she became unable to work on January 5, 2011. (Transcript, Doc. 6 at 20, 144-50.) The claim was denied at the initial administrative stages. (Tr. 70-80, 97-100.) On December 6, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Jeanne M. VanderHeide, who considered the application for benefits *de novo*. (Tr. 33.) In a decision dated January 13, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 5, 2011 through the date of the ALJ's decision. (Tr. 29.) Plaintiff requested Appeals Council review of this decision. (Tr. 8-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 18, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) On May 3, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not

the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

3

**C.     Governing Law**

Disability for purposes of DIB and SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a) (DIB). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 404.1520. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with

approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since January 5, 2011. (Tr. 22.) At step two, the ALJ found that Plaintiff's hypertension, depression, anxiety, generalized pain disorder and cannabis dependence were "severe" within the meaning of the second sequential step. (Tr. 22.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 23-25.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform sedentary[3] work further limited to sitting no more than six hours and standing and/or walking no more than two hours in an eight-hour workday, lifting no more than ten pounds occasionally, no climbing of ladders, ropes or scaffolds and no more than

---

[3]

    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

occasionally climbing ramps and stairs. (Tr. 25.) Plaintiff must avoid all hazards such as moving machinery and unprotected heights. (*Id.*) She is limited to low stress work that involves no more than occasional decision-making and does not involve fast-paced production. (*Id.*) At step four, the ALJ found that Plaintiff could perform her past relevant work as a data entry clerk and therefore she was not suffering from a disability under the Social Security Act. (Tr. 28-29.)

  **E.**  **Administrative Record**

Plaintiff was 41 years old at the time of the hearing. (Tr. 37.) Plaintiff has a high school education and a certificate in computer programming. (Tr. 38, 182.) She lives in a house with her adult son. (Tr. 38.) Plaintiff is five feet two inches tall and weighs 130 pounds. (Tr. 181.) She last worked on January 5, 2011 and testified that she lost that job because her work was not up to standard. (Tr. 39.) She described that she had problems with her blood pressure that resulted in a trip to the emergency room and in her being sent home from work. (Tr. 39-40.) She testified that her past work has included quality control auditor, production line worker, packing, shipping, and receiving, dispatcher, data entry, receptionist, shipping clerk and loan officer processor. (Tr. 38.)

In her application, Plaintiff alleged the following impairments: Endometriosis, sickle cell anemia, hypertension, high blood pressure, depression, chronic arthritis, stress, anxiousness and irregular heart beat. (Tr. 181.) Plaintiff testified that she has pain in her joints including the elbows, shoulders, hips and knees, she is not able to stand "long," it was difficult for her to lift and open tops on items and she cannot lift her arms over her shoulders. (Tr. 41, 60.) She testified that she takes Motrin 800 three times per day for arthritis and joint pain, codeine cough medicine for bronchitis, aspirin for her heart, hypertension medication, three anxiety medications, a form of Benadryl for sinus problems, and Seroquel for sleep. (Tr. 42.) She explained that for the past six to eight months she only sleeps for an hour or two per night and tries to lie down no more than

twice a day for an hour, unless she falls asleep. (Tr. 43, 63.) She was wearing a wrist brace at the hearing and testified that a doctor at the Melvin Center prescribed it after she tore ligaments in her hand. (Tr. 43.) She described continued problems in lifting without wearing the brace, can lift no more than five pounds and has no problems gripping. (Tr. 43, 50, 53.) She testified that she wears the brace no more than twice per week. (Tr. 44.) She described swelling in her knees and legs if she sits for more than three hours, but if she stands and walks around, she can sit back down. (Tr. 48.) She can stand for about an hour at a time and she can walk about two blocks, but stair climbing bothers her. (Tr. 48.) She testified that she gets blood clots monthly, which make her legs ache and for which she takes Motrin. (Tr. 48-49.) She was not prescribed compression stockings. (Tr. 49.) In March 2011, a treatment record noted Plaintiff's report that she engaged in aerobic exercise daily and was using marijuana. (Tr. 283.)

She testified that she had a partial hysterectomy in 2000 to address endometriosis, yet she now has the endometriosis on her rectum and it causes diarrhea after she eats. (Tr. 49.) She described having dizzy spells, fever and hives, and passed out once as a result of her high blood pressure. (Tr. 58-59.) She testified that she has a headache once a week, lasting all day, for which drinking water and sitting down and relaxing helps to minimize the pain. (Tr. 60.)

Plaintiff testified that she is able to shower but she sometimes needs help putting on her shirt when her joints swell. (Tr. 45.) At the hearing she testified that she does not cook anymore, her son does the laundry, someone else does her grocery shopping because she tore the ligaments in her hand when lifting bottled water out of the grocery cart, and her neighbor does her cleaning. (Tr. 46.) Plaintiff testified that she reads motivational books and could use the computer for surfing the web, but does not. (Tr. 46, 55.) She does not have a driver's license because it was suspended. (Tr. 45.) She took a cab to the hearing. (Tr. 45.)

With respect to her mental issues, she described feeling upset and angry, had a short attention span, and was a little agitated. (Tr. 55, 62.) She testified that these symptoms are improved with medication. (Tr. 55.) She also feels like crying and cries at least once a week. (Tr. 55.) She testified that in the past six months she had one or two panic attacks where she was agitated, upset and crying. (Tr. 56.) Plaintiff testified that she had stopped smoking marijuana in February or March and stopped smoking cigarettes in March or April. (Tr. 57.)

In February 2011 Plaintiff complained of a nonproductive cough and fever. X-rays of the chest were negative and Plaintiff was diagnosed with acute bronchitis and chronic hypertension and advised to quit smoking cigarettes and marijuana. (Tr. 241-47.) The record shows that Plaintiff was given a "working diagnosis" of osteoarthritis and essential hypertension on March 10, 2011, (Tr. 282-84.) On March 28, 2011, Plaintiff complained of right shoulder pain and she reported that Motrin helped. (Tr. 279.) On examination, right shoulder extension, flexion and internal rotation were reduced. (Tr. 280.) An April 7, 2011 x-ray was negative for arthritis. (Tr. 51, 239, 276-77, 288.) In April 2011, Plaintiff complained of hand pain after lifting a heavy water bottle. (Tr. 263-65.) X-rays of the right hand revealed no significant abnormality and Plaintiff was given a splint to wear due to the severity of her symptoms. (Tr. 263-65, 268.) At the hearing the ALJ confirmed with Plaintiff's counsel that she had all of the x-rays and that they were negative for arthritis. (Tr. 51-52.) Similarly, the ALJ confirmed that the record contained a July 2011 diagnosis for chronic pain or fibromyalgia, yet there was nothing other than the statement to support the diagnosis. (Tr. 52.)

Plaintiff treated at New Center Community Mental Health from June 29, 2011 through September 14, 2011. (Tr. 297-313.) As the ALJ pointed out, and Plaintiff reported in her treatment session, she has no prior history of psychiatric hospitalization or mental health services. (Tr. 22,

312.) In July 2011, Swarn Mahajan, M.D., diagnosed major depressive disorder, recurrent, severe, without psychotic features and nicotine dependence. (Tr. 308.) Dr. Mahajan recommended she stop Wellbutrin and prescribed Celexa. (Tr. 308.) Plaintiff treated at Detroit Community Health Connection from July 6, 2011 thought November 11, 2011. (Tr. 314-321.)

Plaintiff's attorney submitted new medical records to the Appeals Council, shown as Exhibits 8F and 9F in the Transcript. As will be set forth in the analysis below, Plaintiff requests remand for consideration of this new evidence.

The vocational expert ("VE") testified that Plaintiff's past work as a dispatcher was skilled and sedentary in exertion, data entry was semi-skilled and sedentary in exertion, receptionist was semi-skilled and sedentary in exertion, shipping clerk was semi-skilled and medium in exertion, and loan officer clerical worker was semi-skilled and light in exertion pursuant to the Dictionary of Occupational Titles (DOT). (Tr. 65.)

At the hearing, the ALJ asked the VE to consider an individual of the Plaintiff's age, education and past work experience who is limited to sedentary work and further:

> [L]imited to no climbing ladders, ropes or scaffolds, occasional climbing of ramps or stairs, . . . . Such an individual should avoid all use of moving machinery and all exposure to unprotected heights. In addition such an individual would need to be employed in a low stress job defined as having only occasional decision making required and . . . performed in a work environment free of fast paced production requirements. (Tr. 65-66.)

The VE testified that such an individual could perform Plaintiff's past work in data entry. (*Id*.)

The ALJ then asked the VE to consider the same individual as the prior hypothetical with the additional limitation that "the individual further required a sit stand option, sitting or standing alternatively throughout the day provided the employee is not off task more than 10 percent of the workday." (Tr. 66.) The VE testified that such an individual could not perform the past work in

9

data entry. (Tr. 66.) However, such an individual could perform the following sedentary, unskilled jobs in the region defined as Southeast Michigan: Sorter (1,500 jobs), packer (1,500 jobs), and assembler (3,000 jobs). (Tr. 64, 66.)

The ALJ added the further limitations to "no overhead reaching bilaterally, occasional handling of objects, that is gross manipulation with the right dominant hand." (Tr. 66.) The VE testified that such an individual could perform the position of surveillance system monitor, with 1,200 jobs in the region. (Tr. 66.)

When the ALJ added to each of the previous three hypothetical questions a limitation to "only occasional interaction with the public." (Tr. 67.) The VE testified that all of the previous jobs would remain. (*Id.*) In response to a final question by the ALJ the VE confirmed that if such an individual were off-task 20 percent or more of each workday it would eliminate all competitive employment. (*Id.*) In response to questioning from Plaintiff's attorney the VE testified that missing two days per month is "right at the borderline" of what is acceptable in employment and that missing anything beyond two days per month is preclusive of competitive employment. (Tr. 68.)

**F.    Analysis**

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence because there was no supportive medical opinion of record on which the ALJ relied. Second, Plaintiff argues that the case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence that was not before the ALJ. (Doc. 9, 16.)

**1.    Whether the RFC Was Supported By Substantial Evidence**

Plaintiff correctly points out that no doctor of record opined as to Plaintiff's physical limitations. Plaintiff argues that the ALJ was "simply setting forth her own impressions, with no

10

supportive opinion in the medical record."[4] (Doc. 9 at 12.) Defendant correctly argues that the RFC assessment is an administrative finding and not a medical opinion. *See* 20 C.F.R. § 404.1545(a), Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2.

Initially, this case is distinguishable from those cases cited by Plaintiff wherein the ALJ impermissibly translated "raw medical data," such as an MRI, into a functional capacity determination and substituted this interpretation for the opinions of physicians, including treating physicians. *Mitsoff v. Comm'r of Soc. Sec.*, 940 F.Supp.2d 693, 703 (S.D.Ohio 2013)(cited by *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074 at *16-17 (E.D.Mich. 2013)). In the instant case the ALJ did not discount any medical opinions in favor of her own RFC. The *Mitsoff* court recognized that "there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source." *Id.* at 703 (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.").

On this record, I am unable to conclude that the medical evidence showed so little physical impairment that the ALJ could render a "commonsense" judgement about functional capacity, within the meaning of the cases cited above. The ALJ made her finding in spite of the state agency medical consultants' conclusions that Plaintiff has no severe impairments and thus no resultant

---

[4]It is worth noting that Plaintiff was represented by counsel at the hearing and the ALJ offered Plaintiff's counsel the option of sending Plaintiff to a consultative examination, where, presumably an RFC assessment could also have been obtained. Plaintiff's counsel declined the offer. (Tr. 68-69.) A Plaintiff, especially one having the benefit of counsel, who turns down an offer to undergo further medical examination cannot be heard to later complain about the dearth of medical opinions in the record. The undersigned will nonetheless consider Plaintiff's argument regarding the lack of support for the RFC, in light of the error in the standard the ALJ applied to the RFC in this case.

work-related limitations from those conditions, and that she may return to her prior work. This evidence does not support the ALJ's finding that Plaintiff is so restricted that she is limited to sedentary work. (Tr. 76.) There are no physical residual functional capacity assessments in the record to otherwise support the ALJ's RFC, an issue never raised on the record by Plaintiff's counsel, in spite of discussion on the record of further consultative examinations.

I further suggest that the ALJ applied the wrong standard to her RFC findings. "Residual functional capacity" is defined as "the *most* you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1) (emphasis added). Multiple times in her decision the ALJ described the limitations in the RFC as the "least" of what Plaintiff can perform, for example, "The claimant has acknowledged the performance of more strenuous exertional activities, and this suggests that she is capable of performing *at least sedentary work with lifting ten pounds*, *at the very least.*" (Tr. 26.)(Emphasis added.) The ALJ also identified evidence in the record which she found "show[s] that the claimant is capable of performing substantial gainful activity on a regular and continuing basis *at least at the level as set forth in the residual functional capacity finding above.*" (Tr. 27.)(Emphasis added.) The ALJ's findings in the RFC must represent the most that Plaintiff may perform and not the least.

Unlike the physical limitations, the record includes multiple mental medical opinions. On May 17, 2011 medical consultant Kathy A. Morrow, Ph.D., found that Plaintiff's mental impairments were non-severe, opining that each of the "B" criteria were mild, with no repeated episodes of decompensation. (Tr. 75-77.) Plaintiff underwent a consultative mental status examination on June 4, 2011. (Tr. 292-96.) Nick Boneff, Ph.D., Licensed Psychologist, diagnosed an adjustment reaction with disturbance of mood, mild, and cannabis dependence disorder. (Tr. 294.) He opined that Plaintiff "presents with symptoms of a mild adjustment reaction and cannabis

dependence disorder and is not evidencing any significant psychiatric symptoms, anxiety, depression or disturbance of thought, problems with concentration or attention that would affect her ability to do work related activities at a sustained pace." (Tr. 294.) The record also contains treatment records from New Center Community Mental Health Services that do not show more severe limitations than set forth by Dr. Boneff.

It is unclear whether the limitation to no fast-paced production is supported by Dr. Boneff's opinion. (Tr. 294.) The ALJ appears to read the opinion as stating that Plaintiff "would have limitations that would affect her ability to work at a sustained pace." (Tr. 27.) However, a plain reading of Dr. Boneff's opinion seems to suggest that Plaintiff would *not* have problems "that would affect her ability to do work related activities at a sustained pace." (Tr. 294.)

I therefore suggest that the ALJ's RFC is not supported by substantial evidence and the case should be remanded to obtain further medical evidence as the ALJ deems necessary, including a possible physical residual functional capacity assessment, and for a new determination of Plaintiff's RFC setting forth the maximum Plaintiff can perform, with references to supporting evidence in the record.

### 2. Whether Additional Evidence is New and Material and Requires Consideration on Remand

Plaintiff asks for a remand for consideration of evidence that Plaintiff alleges is both new and material. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for

13

the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

The evidence that was submitted to the Appeals Council was not before the ALJ. The additional records are labeled exhibits 8F and 9F. (Tr. 322-38, 339-362.) They contain mental health treatment records, including a Psychiatric Evaluation, from Southwest Counseling and Development Services ranging in date from April to May 2012   (Tr. 326-38.) They also include records from Henry Ford Health System from December 2011 through February 2012. (Tr. 342.)

A review of the exhibits for the sole purpose of determining whether they are new and material shows that some of the evidence is dated prior to the date of the ALJ's decision and relates "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R.§ 404.970(b). Several of the records post-date the ALJ's hearing and decision and were not available prior to the ALJ's hearing and subsequent decision.

The Henry Ford Health System records show that Saima Khan, M.D., recommended that Plaintiff follow-up with rheumatology due to elevated ESR levels. (Tr. 343.) Dr. Khan reported that the remainder of Plaintiff's work-up for connective tissue disease was negative and they needed to "rule out" polymyalgia rheumatica or polymyositis. (Tr. 349-50.) Dr. Khan's records reveal normal x-rays of Plaintiff's lumbosacral spine, hips and pelvis, no obvious joint deformity, and no extremity swelling or effusion of the joints. (Tr. 345-47, 349, 356, 357.)

With respect to the mental health treatment records, Plaintiff argues that the GAF scores from Drs. Boneff and Mahajan are essentially consistent with the new Jaswant Purohit, M.D., records from Southwest Counseling, May 4, 2012, assigning a GAF score of 45, in spite of the ALJ having given reduced weight to those opinions which were in the record before her (Drs. Boneff and Mahajan assigned GAFs of 50) (Tr. 294, 309.) Plaintiff fails to show the relevance of this, where there Dr. Boneff's medical opinion of record shows less restrictive limitations than those set forth by the ALJ. Dr. Purohit's records do not show more severe limitations than those set forth by the ALJ. Although additional diagnoses of panic disorder with agoraphobia and mood disorder NOS were noted, it was also reported that Plaintiff has responded well to Seroquel and Celexa and would continue both medications. (Tr. 327-28.) Treatment provider Margaret Morton "hypothesized" that Plaintiff has bipolar disorder. (Tr. 334-35.) It is unlikely that this would change the ALJ's decision. First, it is a hypothesis. Second, there are no credentials attached to Ms. Morton's signature block, so it is not clear that she can make such a diagnosis. (Tr. 335.) Third, this hypothesized diagnosis pre-dates Dr. Purohit's diagnoses, suggesting that he did not adopt it. (Tr. 328, 335.)

Plaintiff's argument relies in part on a "potential" new diagnosis. (Doc. 16 at 7.) A "potential" diagnosis or diagnoses which are being "considered" (Doc. 16 at 7) are simply not

enough to require remand pursuant to sentence six. An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms . . . ." 20 C.F.R. § 404.1508. Remanding cases for consideration of "potential" diagnoses identified beyond the hearing level would effectively grind the application and hearing process to a halt and prevent final adjudication of *any* Social Security disability claim. The additional physical health records provided by Plaintiff evidence continuing treatment and a raised ESR level, but no reasonable likelihood of having changed the ALJ's decision.

I therefore suggest that the additional records are not material and provide no evidence that would contradict the ALJ's findings or shed new light on Plaintiff's impairments. The additional records regarding Plaintiff's physical conditions provided no new diagnoses. Neither the mental health nor physical health records provided new significant findings or evidence of increased severity or limitations not already considered by the ALJ or significantly different from the evidence already considered. There is no reasonable probability that the ALJ would have reached a different disposition of Plaintiff's claim if she had this evidence. Plaintiff's request for a sentence six remand should be denied.

However, as mentioned above, there is a lack of information in the record from which to determine Plaintiff's functional and exertional limitations. The Court should remand this matter for the ALJ to develop the record as necessary, including obtaining residual functional capacity assessment(s).  See 20 C.F.R. § 404.1513**.** The ALJ's RFC is not based on the proper legal standard or substantial evidence, therefore, a new step four and, if necessary, step five determination must be made by the ALJ.

### G.     Conclusion

The Commissioner's decision is not supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket no. 15) should be DENIED.  Plaintiff's Motion for Summary Judgment (Docket no. 9) should be GRANTED.  The case should be REMANDED back to the Commissioner for further proceedings consistent with this Report.

### III.     REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);  *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

    s/ Charles E Binder
CHARLES E. BINDER
Dated: July 14, 2014            United States Magistrate Judge